IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | MISC. DOCKET NO. 06-MC-69 |
| STUDENT FINANCE CORPORATION, | : | |
| | : | |
| Debtor | : | |
| | : | |
| | : | |
| CHARLES A. STANZIALE, JR., | : | |
| CHAPTER 7 TRUSTEE OF | : | Case No. 02-11620-JBR |
| STUDENT FINANCE CORPORATION, | : | (Bankr. D. Del.) |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAREER PATH TRAINING | : | |
| CORPORATION, et al. | : | Adversary Proceeding |
| | : | No. 04-56414 |
| Defendants | : | (Bankr. D. Del) |

<u>MEMORANDUM AND ORDER</u>

McLaughlin, J.                              November 29, 2006

        This is a miscellaneous action to enforce a subpoena

issued from this Court, seeking the production of documents

relevant to an adversary bankruptcy proceeding pending in the

District of Delaware.  The movant here, Career Path Training

Corp. ("Career Path"), is a defendant in the adversary action.

Career Path seeks documents from a private investigation firm,

The James Mintz Group ("the Mintz Group"), retained by the

attorneys for the largest creditor in the bankruptcy, Royal

Indemnity Co. ("Royal").  The Mintz Group, Royal, and Royal's

attorneys (collectively "the respondents") have all filed

oppositions to the motions to compel and have cross-moved for a

protective order on the ground that the material sought is all protected attorney work product.  Because none of the respondents is a party to the underlying adversary action, this raises the complicated issue of whether the protection against disclosure of attorney work product may be asserted by third parties.

I.   BACKGROUND

        The underlying bankruptcy litigation here is that of Student Finance Corporation ("SFC"), a company that provided student loans for trade schools, principally truck driver training schools.  SFC would make or purchase educational loans, pool them together, and then sell them to investors as asset backed securities.[1]

    A.   SFC's Bankruptcy

    In the spring of 2002, SFC was forced into involuntary bankruptcy by its creditors.  This bankruptcy is pending as In re Student Finance Corp., No. 02-11620 (Bankr. D. Del.).  The bankruptcy was precipitated by allegations that SFC had fraudulently inflated the performance of its loans and disguised

_____

[1]    Declaration of Alan S. Gilbert ("Gilbert Decl.") at ¶ 4, attached as Exhibit 1 to the Response of Sonnenschein, Nath, & Rosenthal LLP, Royal Indemnity Company, and the James Mintz Group to the Motion of the Career Path Schools to Overrule Objections to Subpoena and Compel Compliance with Subpoena and Cross-Motion for a Protective Order (Docket No. 5), hereinafter "Respondent's Opposition."

the true rate of default in its loan pools by misrepresenting students' eligibility for, and ability to repay, the loans, and by allegedly making payments on the loans out of SFC's own funds. In addition, many of the trucking schools whose students received SFC loans allegedly participated in the fraud by submitting false information about the loans and by making loan payments out of school funds or out of funds provided by SFC.[2]

Once SFC's alleged fraud was discovered and the true condition of SFC's loans became known, many of the loans went into default. A large number of these loans were insured against default by Royal Indemnity Company. These defaulted loans led to over $500 million in claims against Royal, which made it by far the largest creditor in SFC's bankruptcy.[3]

B.    The Mintz Group's Investigation

In May 2003, Royal's attorneys, the law firm of Sonnenschein, Nath & Rosenthal ("Sonnenschein"), hired The Mintz Group, a firm of professional investigators, to investigate both SFC and the trucking schools whose students had received SFC loans. The purpose of the investigation was to gather information in preparation for possible litigation that Royal

---

[2]    Gilbert Decl. at ¶¶ 6-9; Declaration of Charles A. Stanziale, Jr. As Chapter 7 Trustee of Student Finance Corporation ("Stanziale Decl.") at ¶ 2, attached as Exhibit 4 to Respondent's Opposition.

[3]    Gilbert Decl. at ¶¶ 10-11; Stanziale Decl. at ¶¶ 3, 5.

contemplated bringing against both SFC and the trucking schools.
The investigation was supervised and directed by Sonnenschein and
involved interviews with SFC employees, as well as employees and
former students of the truck driving schools.  The investigation
also involved the collection and review of public records
including FOIA results, website reports, Lexis/Nexis searches,
and asset searches.[4]

C.    The Trustee's Lawsuit Against Royal and the Subsequent
      Settlement Agreement

In June of 2003, Royal moved for the appointment of a
bankruptcy trustee.  In November 2003, a trustee was appointed,
and that same month, the trustee instituted an adversary
proceeding against Royal.  Around the same time (the record is
unclear as to exactly when), Royal sued SFC and several trucking
schools, and was itself sued by several creditors.[5]

In or about October 2004, the Trustee and Royal settled
the adversary proceeding between them.  As part of the court-
approved settlement, Royal agreed to pay $4,900,000 to the
Trustee and in return received a $1,900,000 administrative claim

---

[4]     Gilbert Decl. at ¶¶ 21-22; Declaration of Andrew B. Melnick
("Melnick Decl.") at ¶¶ 2-3, 5, 7, attached as Exhibit 2 to the
Respondent's Opposition.

[5]     Gilbert Decl. at ¶¶ 12-14, 22.

to be paid out of the proceeds of claims by the estate against third parties.[6]

As part of the settlement, the Trustee agreed to file lawsuits against the trucking companies and other third parties involved with SFC to recover money for the estate.[7]  If the Trustee decided not to bring an action against a third party, the settlement agreement gave Royal the right to do so on behalf of the estate at its own cost, subject to court approval.  In addition, the Trustee and Royal agreed to enter into a litigation agreement giving each other access to privileged information concerning the estate's claims.[8]

The agreement also gave Royal rights over the Trustee's ability to settle claims against third parties.  The Trustee agreed to confer with Royal in good faith before agreeing to any settlement, and if Royal opposed settling, the Trustee was required to give Royal the opportunity to prosecute the claim on behalf of the estate, as long as Royal guaranteed to the estate

---

[6]    October 12, 2004, Settlement Agreement between Student Finance Corporation Trustee and Royal Indemnity Company (hereinafter "Settlement Agreement") at ¶ 2, attached as Exhibit G to the Motion of the Career Path Schools to Overrule Objections to Subpoena and Compel Compliance with Subpoena (Docket No. 1) (hereinafter "Career Path's Motion"), also attached as Exhibit 1 to Attachment A of the Gilbert Decl.

[7]    Gilbert Decl. at ¶ 16; Settlement Agreement at ¶ 7.

[8]    Id.

that the recovery would exceed the rejected settlement.[9]   The
bankruptcy court approved the settlement agreement on October 29,
2004.

      D.   <u>The Current Adversary Action and the Subpoena at Issue</u>

On November 1, 2004, the Trustee brought an adversary
proceeding against Career Path to recover allegedly fraudulent
transfers from SFC.   This matter is pending as <u>Stanziale v.
Career Path Training Corp.</u>, No. 04-56414 (Bankr. D. Del.).   On
July 28, 2005,  Career Path served a subpoena <u>duces</u> <u>tecum</u> on the
Mintz Group, issued from this district court, requiring it to
produce documents in the adversary action.

The subpoena sought ten categories of documents, all
pertaining to the Mintz Group's investigation into SFC and the
trucking schools, including Career Path.   The ten categories
sought documents concerning, referring or relating to, in whole
or in part:

    1)   any investigations into the Career Path;

    2)   any communications to or from the Mintz Group
        regarding Career Path;

    3)-4) Career Path, including documents obtained from third
        parties;

    5)   the Mintz Group's investigative file;

---

[9]   Settlement Agreement at ¶ 12.

6)   any investigation performed by the Mintz Group regarding SFC;

7)   SFC's business dealings with any person that provided truck driving training or education;

8)   communications between the Mintz Group and the Trustee regarding SFC;

9)   communications between the Mintz Group and Royal regarding SFC; and

10)  any fees charged or payments received for work or services referred to in the foregoing.[10]

E.   The Current Miscellaneous Action

On April 12, 2006, Career Path filed this motion, seeking to compel responses to the subpoena.  The Mintz Group, joined by Sonnenschein and Royal opposed the motion to compel and cross-moved for a protective order on the ground that the material sought was investigative material prepared at the direction of Sonnenschein in anticipation of litigation and was therefore protected as attorney work product.

Career Path countered by arguing that attorney-work product may be asserted only by parties and that neither the Mintz Group, nor Royal, nor Sonnenschein is a party to the

_____

[10]   July 28, 2005 Subpoena to James Mintz Group Inc. (hereinafter "Subpoena"), attached as Exhibit A to Career Path's Motion.

7

underlying adversary action.  Career Path also argued that, even if the material could be protected as attorney work product, the respondents had waived that privilege by submitting an inadequately detailed privilege log.  The Mintz Group, Royal and Sonnenschein responded by denying that work product protection was limited to parties and arguing that, even if it were, they should be considered parties.  In the alternative, if work product protection did not apply, they argued that the material requested should be protected from disclosure under FRCP 26(c) as oppressive and unduly burdensome to produce.

Because the parties' briefing focused exclusively on whether work product protection was available to non-parties, the Court ordered supplemental briefing on whether, if work-product protection were available, it would apply to protect the documents at issue here from disclosure.  The parties disagree as to whether the Mintz Group has submitted an adequate privilege log and whether Career Path has made an adequate showing of need for the documents to overcome work product protection, if it exists.

F.   The Documents at Issue

Career Path concedes that the documents it requested essentially comprise the Mintz Group's entire investigative file for work performed for Sonnenschein and Royal concerning SFC and

the truck driver training schools.[11]  The Mintz Group has stated
that these files amount to 66 Redweld® folders and several loose
folders and 622 electronic files.  The paper file alone is
alleged to constitute eighteen linear feet of stacked documents.
The Mintz Group has provided a 10 page index listing in summary
fashion the contents of each folder, but has not provided an
index of the electronic documents.[12]

        The Mintz Group has represented that all of the work
reflected in the investigative file was performed at
Sonnenschein's request and was communicated solely to counsel.
An affidavit provided in support of their motion states that
"[n]early every document in each of the folders is annotated with
the investigators' handwritten comments, handwritten post-it
notes, or colored flags or highlighters" and that "[m]any of the
handwritten comments suggest follow-up actions for further
investigation or supply details of conversations between the
investigator and subject."[13]

_____

[11]     The Career Path School's Opposition to the Amended Cross-
Motion for a Protective Order (Docket No. 10) (hereinafter
"Career Path's Opposition") at 2, ¶ 5.

[12]     Declaration of Johan Buys (hereinafter "Buys Decl.") at
¶¶ 3-4, attached as Exhibit 3 to Respondent's Opposition.

[13]     Id. at ¶ 5; Index attached to Buys Decl. at 1.

In their briefing, the parties identify four categories of documents at issue:

1) Attorney notes and memoranda;

2) Investigators' memoranda and reports to Sonnenschein, including "action lists" for the investigators;

3) Interview notes and scripts prepared by investigators;

4) Public records, including FOIA results, FOIA requests, news articles, court documents and deposition transcripts, website reports and Lexis/Nexis and asset searches.[14]

The Mintz Group also refers to a category of "miscellaneous correspondence" which constitute 15% of the electronic files at issue, but for which it has not prepared an index or a privilege log.  In the course of briefing this matter, Career Path has stated it will no longer seek to discover materials prepared by an attorney for the respondents or asset searches performed on individuals or entities other than Career Path, itself.[15]

---

[14]   Categories 1, 2, and 4 are given in Career Path Schools' Supplemental Brief regarding Work Product Issues (hereinafter "Career Path's Supp. Br.") (Docket No. 16) at 6.  Categories 2, 3, and 4 are given in Buys Decl. at ¶ 6

[15]   Career Path's Supp. Br. at 3.

II.   LEGAL ANALYSIS

Resolving this matter requires analysis of at least two distinct issues:  1) whether non-parties in the position of the Mintz Group, Royal, and Sonnenschein may assert the attorney work product privilege; and 2) if so, whether the material sought to be protected is, in fact, work product and whether Career Group has made a sufficient showing to overcome the privilege.

A   Are the Mintz Group, Royal, and Sonnenschein Entitled to Assert the Attorney Work Product Privilege?

The work product privilege protects "the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991), citing Hickman v. Taylor, 329 U.S. 495, 510-11 (1947).  Its purpose is to allow lawyers to prepare for litigation "free from unnecessary intrusion by opposing parties and their counsel." Hickman at 511. The work product privilege is not absolute, and work product can be produced upon a showing that the party seeking discovery has a substantial need for the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003).

1.   The History of the Work Product Privilege

Determining whether the work product privilege is available to the third-party respondents in this case requires an examination of its development.  The history of the work product privilege begins with the U.S. Supreme Court's 1947 decision in Hickman v. Taylor.  Prior to that decision, federal courts had taken a variety of approaches to protecting information prepared or gathered by an adversary or his representatives in preparation for litigation, some refusing to allow discovery of such information on grounds of relevance, hearsay or privilege, others allowing such information to be produced.  Wright, Miller & Kane, 8 Federal Practice & Procedure § 2021 at 313-15 (3d ed. 1994).  In Hickman, the Supreme Court resolved the issue by recognizing a qualified protection from discovery for attorney work product.

At issue in Hickman were witness statements taken by an attorney for a ferry company sued under the Jones Act for the death of a sailor.  The plaintiff had served interrogatories asking whether witness statements had been taken and requesting that they be produced.  The district court, finding the statements unprotected by attorney-client privilege, had ordered their production and held the defendant and the attorney in contempt for refusing to comply.  The circuit court reversed, finding the material to be the "work product of the lawyer" and therefore privileged from discovery.  Id. at 499-500.

12

On appeal, the Supreme Court began by analyzing which discovery rule was implicated by the plaintiff's request.  The Court noted that the plaintiff had believed he was proceeding under Federal Rule of Civil Procedure 33, which governs interrogatories, but that the district court based its contempt order on both Rule 33 and Rule 34, which governs production of documents, and that the circuit court had grounded its analysis in Rule 26, which allows depositions to be taken by testimony or written interrogatories.  The Court concluded that none of these three approaches was the proper procedural vehicle for compelling the production of the witness statements taken by the defendants' attorney.  The Court held that neither Rule 33 nor Rule 34 was applicable because they allowed discovery only against adverse parties, not against a party's attorney or agent.  The proper procedure, the Court held, would have been for the plaintiff to take the attorney's deposition under Rule 26 and attempt to force him to produce the witness statements through a subpoena duces tecum in accordance with Rule 45.  Id. at 501-505.

The Court declined, however, to decide the case on this procedural irregularity and proceeded to recognize a qualified work product privilege.  The Court concluded that "neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances," because the requested discovery was "simply an attempt, without purported

13

necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties."  Id. at 510.  Absent a showing that production of attorney work product was "essential to the preparation of one's case," discovery should not be permitted.  Id.  Moreover, where work product disclosed an attorney's mental impressions and thinking, the Court doubted that any showing of necessity could ever be made.  Id. at 512-13.

According to the Hickman court, the purpose of the work product privilege was to protect the ability of an attorney to perform his necessary duties for his clients.  In performing his duties, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  Were the work product of a lawyer "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own."  Id. at 510-11.

The Hickman decision did not address whether the work product privilege it announced was limited to parties.  Although the work product at issue was created by an attorney for a party, the language of the opinion is ambiguous.  The Court refers to the purpose of the privilege as protecting attorneys from unnecessary intrusion "by opposing parties and their counsel."

Id. at 510.  Yet, the Court also broadly speaks of work product being exempt from discovery under all of the applicable federal rules: "neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances."  Id. at 509. Because the Court concluded that the work product at issue in Hickman could only have been properly requested through a Rule 45 subpoena duces tecum, the Court's sweeping language suggests it contemplated the work product privilege applying to such subpoenas, arguably including those directed to third parties.

After Hickman, federal courts disagreed over how to interpret the work product privilege.  Although few courts in the aftermath of the decision directly addressed whether the privilege applied to third parties, those that did reached differing conclusions.  Compare Shepherd v. Castle, 20 F.R.D. 184, 187 (W.D. Mo. 1957) (holding that Hickman did not apply to a subpoena duces tecum issued under Rule 45 to a witness not a party to the action) with Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 557-558 (2d Cir. 1967) (holding that Hickman applied to protect materials prepared by a third party in anticipation of separate but related litigation with the party that had subpoenaed them).

In part to create a more uniform interpretation of the privilege, protection for attorney work product was codified into the Federal Rules of Civil Procedure in 1970 as Rule 26(b)(3).

See generally 8 Federal Practice & Procedure at § 2023; United
Coal Companies v. Powell Constr. Co., 839 F.3d 958, 966 (3d Cir.
1988) (work product privilege governed by uniform federal
standard embodied in Rule 26(b)(3)).  Rule 26(b)(3) provides in
pertinent part:

> Subject to the provisions of subdivision (b)(4) of this
> rule [governing expert discovery], a party may obtain
> discovery of documents and tangible things otherwise
> discoverable under subdivision (b)(1) of this rule and
> prepared in anticipation of litigation or for trial by or
> for another party or by or for that other party's
> representative (including the other party's attorney,
> consultant, surety, indemnitor, insurer, or agent) only
> upon a showing that the party seeking discovery has
> substantial need of the materials in the preparation of the
> party's case and that the party is unable without undue
> hardship to obtain the substantial equivalent of the
> materials by other means. In ordering discovery of such
> materials when the required showing has been made, the
> court shall protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of an
> attorney or other representative of a party concerning the
> litigation.

By its terms, the work product privilege embodied in
Rule 26(b)(3) does not apply to third parties, protecting only
documents "prepared in anticipation of litigation or for trial by
or for another party."  Neither the amended Rule itself nor the
Advisory Committee Notes for the 1970 revisions explain why the
Rule's work product protection was limited only to parties.[16]

_____

[16]   The limitation may be an artifact of the Rule's development.
The Notes explain that the revisions to Rule 26 attempted to
harmonize the work product doctrine of Hickman v. Taylor with the
then-existing requirement under Rule 34 that discovery could be
had from another party only for "good cause."  The revisions
accomplished this by doing away with the "good cause"

The enactment of Rule 23(b)(3) has been described by the United States Court of Appeals for the Third Circuit as only "partially codifi[ng]" the Hickman work product privilege. Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985); see also In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003) (work product doctrine "codified in part" in Rule 26(b)(3)).  In at least one respect, federal courts have uniformly extended the work product privilege beyond the terms of Rule 26(b)(3).  Although Rule 26(b)(3) is expressly limited to "documents and other tangible things," federal courts have not hesitated to extend the privilege to oral statements that embody an attorney's mental impressions or work product.  In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003) ("It is clear from Hickman that work product protection extends to both tangible and intangible work product."); United States v. One Tract of Real Property, 95 F.3d 422, 428 n.10 (6th Cir. 1996)

---

requirement, but adding a requirement based on Hickman that discovery of trial preparation materials may be had only on a special showing of need.  Because the "good cause" requirement that Rule 26(b)(3) was intended to supercede was limited to parties, it may be that the Rule 23(b)(3) was also so limited. Alternatively, the drafters may have decided to limit the scope of the Rule to parties to best further the work product privilege's purpose of protecting the attorney's adversary role in a system of open discovery, which the Notes describe as the "the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." Advisory Committee Notes to the 1970 Amendment to Rule 26.

17

("When applying the work product privilege to . . . nontangible information, the principles enunciated in <u>Hickman</u> apply, as opposed to Rule 26(b)(3) of the Federal Rules of Civil Procedure, which applies only to 'documents and tangible things.'"); <u>Alexander v. F.B.I.</u>, 192 F.R.D. 12, 17 (D.D.C. 2000) (same); 8 <u>Federal Practice & Procedure</u> § 2024 at 337.

   After the 1970 amendments, the provisions of the Federal Rules of Civil Procedure affecting work product remained unchanged until 1991.  In that year, Rule 45 was amended to streamline subpoena practice and "clarify and enlarge" the protections available to persons subpoenaed.  Advisory Committee Notes to the 1991 Amendment to Rule 45.  One of the many changes to the Rule was the addition of subparagraph 45(c), which for the first time specified the protections available to persons subject to subpoenas.  Prior to the amendment, Rule 45 had incorporated the protections of Rule 26, stating that subpoenas to produce documents were subject to the provisions of Rule 26(c).  Fed. R. Civ. P. 45(d)(1) (1990).  In the 1991 revisions, this express reference to Rule 26 was deleted and the protections available to those receiving a subpoena were spelled out in subdivision 45(c).  That subdivision expressly provides that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies."  Rule

18

45(c)(3)(A).  The Advisory Committee Notes explain that subdivision 45(c) was "not intended to diminish rights conferred by Rules 26-37 or any other authority" and that subparagraph 45(c)(3) was intended to "track[ ] the provisions of Rule 26(c)."

2   Is Royal a "Party" for Purposes of Asserting the <u>Work Product Privilege under Rule 26(b)(3)?</u>

Before beginning to analyze whether third parties may assert the work product privilege, the Court must first dispense with the respondents' initial argument that Royal should be considered a party to the underlying adversary action and therefore entitled to assert work product protection under Rule 26(b)(3).  Royal argues it should be considered a party to the adversary action for two reasons:  because, as a creditor, it is a party to SFC's bankruptcy and because its settlement agreement with the bankruptcy trustee gives it an interest in the litigation.  Neither of these arguments is persuasive.

Royal's status as a creditor in SFC's bankruptcy does not make it a party to the underlying adversary action here.  The adversary proceeding was brought by the bankruptcy trustee against Career Path.  No creditor, including Royal, is a party to that action.  Under Federal Rule of Bankruptcy Procedure 7024, Royal could have sought to intervene in the adversary action pursuant to the terms of Federal Rule of Civil Procedure 24 and become a party to the action, but it did not do so.  Merely being

19

a creditor in the related bankruptcy proceeding does not give Royal any of the rights or obligations of a party to the adversary action.  Just as Royal had no obligation as a creditor to answer the complaint or serve initial disclosures, it has no right as a creditor to assert work product privilege under Rule 26(b)(3).

Royal's settlement agreement does not alter Royal's status as a non-party for purposes of Rule 26(b)(3).  The settlement agreement gives Royal an interest in the litigation and certain rights with respect to the trustee, including the right to be consulted concerning settlement of adversary claims and under certain conditions the right to take over claims and prosecute them on behalf of the estate.  It does not, however, purport to make Royal a party to adversary actions brought by the trustee.  Although the settlement agreement might provide the basis for Royal to move to intervene in the adversary action, in the absence of such a motion being made and granted, the agreement does not make Royal a party.

Royal also cannot be considered a "party's representative" entitled to assert work product protection under Rule 26(b)(3).  Rule 26(b)(3) protects only work product prepared by a party's representative in its representative capacity.  Ramsey v. NYP Holdings, Inc., No. 00-cv-3478, 2002 WL 1402055 at *8 (S.D.N.Y. June 27, 2002), citing the Advisory Committee Notes

to Rule 26(b)(3)  (Subdivision (b)(3) protects materials prepared in anticipation of litigation "by or for a party or any representative <u>acting on his behalf</u>") (emphasis added).  Even if Royal could be considered in some way the trustee's representative by virtue of their settlement agreement, the investigative file at issue here was prepared over a year before the settlement agreement was reached.  The file was therefore not prepared on the trustee's behalf and Royal cannot be considered the trustee's representative for purposes of invoking Rule 26(b)(3).

3    As Non-Parties, Can the Respondents Nonetheless
     <u>Assert the Work Product Privilege?</u>

Having determined that Royal is a third party to the underlying adversary action, the Court now turns to the central issue presented by the respondents' motion to quash:  Can the work product privilege be asserted by those who are not parties to the underlying action for which the information is sought?

a    <u>Prior Decisions Addressing the Issue</u>

The U.S. Court of Appeals for the Third Circuit has never addressed this issue.  Those courts that have considered it have, with very few exceptions, concluded that the language of Rule 23(b)(3) protecting only parties' work product precludes non-parties from asserting the privilege.  <u>See</u>, <u>e.g.</u>, <u>In re Subpoena served on the Cal. Pub. Util. Comm'n</u>, 892 F.2d 778, 780-

81 (9th Cir. 1989); <u>In re Polypropylene Carpet Antitrust Litig.</u>, 181 F.R.D. 680, 691 (N.D. Ga. 1998).[17]

    Although none states so directly, these cases implicitly view Rule 23(b)(3) as the sole source of authority for protecting work product from discovery.  Because "the language of the rule makes clear that only parties and their representatives may invoke its protection," courts are "not free to suspend the requirement."  <u>Cal. Pub. Util. Comm'n</u> at 781.  Even in cases where leaving third party work product unprotected would cause hardship or inequity or frustrate the policy behind the privilege, courts have been largely unwilling to extend the doctrine beyond the terms of Rule 26(b)(3).  <u>See</u>, <u>e.g.</u>, <u>Loustalet v. Refco, Inc.</u>, 154 F.R.D. 243, 246-47 (C.D. Cal 1993).  In <u>Loustalet</u>, even though a third-party had anticipated being involved in the litigation at issue and was a party in "closely related lawsuits," it was not permitted to assert the work product privilege because it was not a party or a party's representative as required by Rule 26(b)(6).  <u>Id.</u> at 247.

---

[17]    <u>See also</u> <u>Ramsey</u>, 2002 WL 1402055 at *6 (collecting cases); <u>c.f.</u> <u>Hunter v. Heffernan</u>, No. 2:94cv5340, 1996 WL 363842 (E.D. Pa. June 28, 1996) (stating, in dicta, that "[d]ocuments prepared by nonparties to the present litigation are unprotected" by the work product privilege); 8 <u>Federal Practice and Procedure</u> § 2024 at 206-07) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.")

A handful of decisions, however, have allowed third parties to assert work product privilege despite the limiting language of Rule 23(b)(3).  See Abdell v. City of New York, No. 05 Civ. 8453, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006); Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 772-73 (M.D. Pa. 1985).[18]

Although both reach the same conclusion, Abdell and Basinger provide different rationales for extending the privilege to non-parties.  In Abdell, the court held that although Rule 26(b)(3) was limited to parties, "the work product doctrine as articulated in [Hickman] is broader than Rule 26(b)(3)" and could provide independent authority for protecting third party work product.  Id. at *3.  In Basinger, the district court relied on the general authority of Rule 26(c) permitting protective orders "for good cause shown" to extend Rule 26(b)(3) to non-parties who were potential defendants in the underlying litigation.  Id. at 772.

---

[18]    There are also a handful of reported cases that assume, without discussion or analysis, that third parties can assert the work product privilege.  See, e.g., National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc., 967 F.2d 980 (4th Cir. 1992) (quashing a third party subpoena on work product grounds); In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988) (same).  Because these cases never address the limiting language in Rule 26(b)(3) or provide any explanation for the basis of a third party's assertion of the privilege, they are not helpful to the Court's analysis here.

Abdell concerned plaintiffs suing for wrongful arrest who sought to subpoena a processing form from the district attorney's office, which was not a party to the suit. Considering the district attorney's motion to quash, the court held that work product protection for a third party might be authorized under Hickman. To determine if Hickman applied, the court analyzed whether protecting the requested material would further the three purposes for the work product privilege articulated in Hickman: preventing discovery from chilling an attorney's ability to prepare his legal theories and strategies; preventing an opponent from free-loading off his adversaries' preparation, and preventing disruption of ongoing litigation. Finding that the form at issue was drafted with the understanding that it was ordinarily discoverable in a criminal case and that there were no pending criminal proceedings, the court held that none of the three purposes of Hickman was implicated by the production of the document and that the form was therefore not protected from discovery. Id. at *3-4.

In Basinger, the district court considered a subpoena issued by a plaintiff in a personal injury auto accident case, seeking the investigative file of the insurer of the tavern where the defendant had been drinking before the accident. Because the tavern was not a party, Rule 26(b)(3) did not apply. Nonetheless, finding that the insurer had prepared the file in

24

anticipation of possible litigation with the plaintiff and that
the tavern could still be sued, the court held that work product
protection identical to that in Rule 26(b)(3) could be authorized
by the broad protective order provision of Rule 26(c).  Rule
26(c) authorizes protective orders when required by justice to
prevent oppression or undue burden, and the court held that it
would be "unduly 'burdensome' and therefore, unjust, to require a
non-party to deliver [work product] to a party who may
subsequently join the non-party in the litigation." Id. at 772;
see also In re Polypropylene, 181 F.R.D. at 692 (issuing a
protective order under Rule 26(c) to protect third party
documents that "would constitute attorney work product as defined
by Rule 26(b)(3) if [the third party] was a party to this
litigation").

        b    Asserting the Work Product Privilege in this
            Case

After considering the varying approaches taken by the
other courts to have addressed the issue, as well as the history
of the work product doctrine and the text of the applicable
rules, the Court concludes that the respondents may assert the
work product privilege here.

As third parties, the respondents cannot invoke work
product protection under Rule 26(b)(3).  That rule is limited by
its terms to work product prepared by a party or its

representative, and as discussed above, neither Royal nor
Sonnenschein nor the Mintz Group is a party to the underlying
adversary action here or is a party's representative.

Rule 26(b)(3), however, is not the only means for
asserting work product protection in federal courts.  The rule is
only a partial codification of the work product privilege,
Sporck, 759 F.2d at 316, and therefore leaves room for the
privilege to be asserted outside its terms in appropriate cases.
Courts have extended the work product privilege beyond the strict
terms of Rule 26(b)(3) to protect intangible work product outside
the "documents and tangible things" protected by the rule.  See
Real Property, 95 F.3d at 428 n.10.  Similarly, the Court
believes the privilege may be extended beyond the strict terms of
the rule to protect non-parties' work product when doing so
accords with the purposes of the privilege set out in Hickman v.
Taylor.

The court disagrees with those courts that have
assumed that Rule 26(b(3) forbids district courts from extending
work product protection to third parties.  Although Rule 26(b)(3)
was intended to set out a uniform work product provision for the
federal courts, nothing in the text of the rule or its history,
or in the relevant advisory committee notes, suggests that it was
intended to foreclose the application of the attorney work
product privilege outside its terms in appropriate cases.

26

The source of the Court's authority to extend the work product privilege beyond the terms of Rule 26(b(3) is three-fold. First, Rule 45 expressly provides that the court from which a subpoena has issued shall quash or modify the subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."  Rule 45(c)(3)(A)(iii).  Rule 45 does not define what privileges and protections are to be enforced under its terms, but the language is broad enough to include protection against discovery of third-party work product in appropriate cases.  Nothing in Rule 45's history or text indicates that it was intended to incorporate Rule 26(b)(3)'s restriction of work product to parties.  The Advisory Committee Notes to the 1991 revisions to the rule indicate that the authority to issue protective orders under Rule 45 was intended to track the general protective order provisions of Rule 26(c), but do not mention the work product provisions of Rule 26(b).

Second, Rule 26(c) authorizes a court to issue a protective order "for good cause shown" to protect "a party or person from annoyance, embarrassment, oppression or undue burden or expense."  As found by the <u>Basinger</u> and <u>Polypropylene</u> courts, this language is sufficiently sweeping to authorize a protective order preventing the undue burden of disclosing third-party work product in appropriate cases.  Indeed, even many of those decisions which refuse to protect third party work product under

27

Rule 26(b)(3) recognize that a protective order could issue under Rule 26(c) to prevent disclosure of the material.  See Cal. Pub. Util. Comm'n at 781 n.2; Ramsey, 2002 WL 1402055 at *7; 8 Federal Practice & Procedure § 2024 at 356 ("To the extent that Rule 23(b)(3), literally read, seems to give insufficient protection to material prepared in connection with some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c).")

Third, Hickman itself provides authority to protect work product outside the terms of Rule 23(b)(6), whether as to intangible work product or work product produced by third parties.  Abdell, 2006 WL 2664313 at *3; see also 8 Federal Practice & Procedure § 2024 at 355 n.17 (noting that the position that Hickman authorizes protection of third party work product "has much to commend itself given the other areas of incomplete codification in Rule 26(b)(3)").

Having determined that the Federal Rules and Hickman authorize the Court to protect third party work product in appropriate cases, the Court must determine whether the respondents present an appropriate case.

Here, Career Path's subpoena seeks an investigative file prepared by Royal's attorneys in anticipation of litigation against SFC and the trucking schools with which it did business, including Career Path.  In essence, the subpoena seeks to compel

28

discovery of an adversary's work product prepared in anticipation
of litigation against the very party issuing the subpoena.
Although the exact litigation that Royal anticipated did not
occur (because Royal did not sue Career Path directly), the
subsequent adversary action by the trustee was brought with
Royal's direct involvement.  Through its settlement agreement
with the trustee, Royal provided funds for the trustee to pursue
adversary actions, like this one, against the trucking firms that
did business with SFC.  Any money collected through these
adversary actions would be paid to the estate for the benefit of
its creditors, the largest of whom is Royal.  In addition to a
financial interest in these suits, Royal also received a measure
of control over the litigation, including the right to be
consulted on strategy and to share privileged documents and the
right, in certain circumstances, to pursue claims on the estate's
behalf.

        Under these circumstances, disclosure of Royal's work
product implicates all the purposes for the privilege articulated
in Hickman:  preventing discovery from chilling attorneys'
ability to formulate their legal theories and prepare their
cases, preventing opponents from free-loading off their
adversaries' preparation, and preventing disruption of ongoing
litigation.  Hickman, 329 U.S. at 511; Abdell at *3-4.  Allowing
a defendant in an adversary action brought by the trustee to

discover creditors' attorney work product would impair those attorneys' ability to investigate their clients' potential claims and to develop legal strategies.  Allowing such discovery would also enable a defendant to utilize the creditors' investigation as his own and thereby free-ride on "wits borrowed from the adversary."  Hickman at 517 (Jackson, J., concurring).  Finally, permitting work product discovery could potentially disrupt ongoing litigation by sidetracking adversary actions into collateral proceedings seeking work product from creditors.  In addition, in this case, there is the possibility, albeit remote, that Royal might become a party to the adversary action under the terms of its settlement agreement with the trustee.  Under the agreement, if the trustee favors settling with Career Path but Royal objects, then Royal has the right to prosecute the claim on behalf of the estate.

> B    Are the Subpoenaed Documents Work Product and, if so, Has Career Path Made a Sufficient Showing to Overcome the Work Product Privilege?

Having determined that the respondents may assert the work product privilege, the Court can now turn to determining whether Royal has established that the requested material is in fact work product and, if it has, whether Career Path has made a sufficient showing of need to permit its production.

The work product privilege protects material "prepared by or on behalf of attorneys in anticipation of litigation."

Westinghouse, 951 F.2d at 1428.  It extends to material prepared
in anticipation of litigation by an attorney's "investigators and
other agents."  United States v. Nobles, 422 U.S. 225, 238
(1975).  Even if material was prepared in anticipation of another
litigation, it will still be protected as work product if the
anticipated litigation was related to the proceedings in which
the material is to be produced.  In re Grand Jury Proceedings,
604 F.3d 798, 803 (3d Cir. 1979) (upholding work product
protection to material prepared in anticipation of related
litigation).  Here, the Mintz Group's investigative file was
prepared on behalf of Royal's attorneys in anticipation of
litigation arising from SFC's bankruptcy, including anticipated
litigation against trucking schools like Career Path.  The
investigative file is therefore covered by the work product
privilege.

        Even if material is protected attorney work product,
it can still be produced if the party seeking discovery shows
that it has a substantial need for the materials and that it
cannot without undue hardship obtain the substantial equivalent
of the materials by other means.  In re Cendant Corp., 343 F.3d
at 663.  There are two levels of protection for attorney work
product: "ordinary" work product prepared in anticipation of
litigation by an attorney or the attorney's agent is discoverable
only upon a showing of need and hardship; "core" or "opinion"

work product that encompasses "mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation is generally afforded near absolute protection from discovery." Id. (internal quotation and citation omitted).

The parties' briefing has identified four categories of materials in the requested investigative file.  The Court will consider these categories separately.

### 1    Attorney Notes and Memoranda

Attorney notes and memoranda are at the center of the "core" work product category generally afforded near absolute protection.  Career Path has withdrawn its request to compel production of these documents and they need not be produced.

### 2    Investigators' Memoranda and Reports to Attorneys

This category consists of "memoranda prepared by the investigators as reports to Sonnenschein concerning interviews with truck driving school personnel and former students, and SFC-related personnel."  Melnick Decl. at ¶ 7; Buys Decl. at ¶ 6.  Like the other documents in the investigation file, these memoranda and reports are alleged to be "annotated with the investigators' handwritten comments, handwritten post-it notes, or colored flags or highlighters" and that "[m]any of the handwritten comments suggest follow-up actions for further

investigation or supply details of conversations between the investigator and subject." Buys Decl. at ¶ 5.

To the extent that annotations on the documents reflect the mental impressions and opinions of the investigating agents or the supervising attorneys, they are "core" work product largely immune from discovery, absent a showing of extraordinary need. Even to the extent the documents do not contain such annotations or those annotations can be redacted, "[m]emoranda summarizing oral interviews" may still "indirectly reveal the attorney's mental processes, his opinion work product." In re Grand Jury Investigation, 599 F.2d 1224, 1231 (3d Cir. 1979).

Although the Court believes these memoranda may be entitled to heightened protection as "core" work product, it is unnecessary to decide the issue because Career Path has failed to make the showing of substantial need and undue hardship required for even ordinary work product.

There are three categories of witness memoranda at issue: those relating to Career Path and its former students and employees, those relating to SFC and its employees, and those relating to other trucking schools and their former students and employees.

a    Memoranda re Career Path and its employees
         and students

With respect to documents relating to interviews with Career Path's students and former or current employees, Career Path asserts these documents "go to the heart of the trustee's case" against it and "would assist [Career Path] in identifying witnesses and information and information relating to the allegations made by the Trustee."  Career Path's Supp. Br. at 8. Career Path asserts that it has substantial need for these memoranda because they were taken closer in time to the events they concern than any statements that could now be obtained from these witnesses and that the statements are therefore presumptively more accurate.  Career Path also states the "itinerant nature" of trucking school students makes it difficult to track down these witnesses.  Career Path has submitted an affidavit attesting to its unsuccessful efforts to track down three of its former students identified by the trustee as having relevant information.  Career Path's Supp. Br. at 9-10.

Although the Court agrees with Career Path that these memoranda would be relevant to the adversary action, the Court does not believe Career Path has shown it could not obtain substantially equivalent information without undue hardship. These witnesses were Career Path's own former employees and students.  Royal had no privileged access or extra information about them, and Career Path could have chosen to interview them

34

at any time.  That Career Path delayed in doing so does not establish the substantial hardship necessary to obtain attorney work product.  Career Path can obtain this information in the same way as did Royal's investigators.  The fact that the memoranda memorialize interviews taken closer to the events in question does not show that Career Path cannot obtain equivalent information.  This case does not involve interviews with percipient witnesses to an accident or a sudden crime where a contemporaneous statement might be more reliable.

Finally, Career Path's attestation that it tried and failed to locate three former students identified by the trustee as having relevant information does not show substantial hardship.  Although Career Path states in its brief that its attempt to locate these students was "timely," its affidavit gives no indication as to when this investigation was made.  In the face of the likelihood that these witness memoranda contain mental impressions and conclusions of attorneys or their representatives, this showing is insufficient to prove the undue hardship necessary for production of attorney work product.

b    Memoranda re SFC and its employees

With respect to documents relating to interviews with SFC-related witnesses, Career Path claims this information is necessary to show whether SFC acted with intent to hinder creditors.  Career Path argues it cannot obtain this information

elsewhere because, due to the current and potential criminal charges from SFC's collapse, "it is likely that key SFC personnel would not give testimony or statements" to Career Path.  Career Path believes SFC's principal, Andrew Yao, who has been indicted, and other SFC officials will refuse to be interviewed and will assert their Fifth Amendment rights if deposed.  Career Path's Supp. Br. at 8, 10.

Career Path's argument that it will not be able to obtain information from SFC personnel due to the pending criminal charges is too speculative to establish undue hardship.  Career Path has provided no evidence that it ever sought out or interviewed any SFC employee or that any employee refused to speak to Career Path out of fear of the pending criminal investigation.  Absent any showing that Career Path has actually encountered the difficulties it assumes, Career Path has not sustained its burden to obtain Royal's work product.

         c    Memoranda re employees and students of other trucking schools

With respect to documents relating to interviews concerning other trucking schools, Career Path claims it needs the information to support a "key part" of its defense, that Career Path did not engage in the practices that other schools are alleged to have done.  It alleges that locating employees and students of these schools "four years or more after the schools

36

closed" is "next to impossible."  Career Path's Supp. Br. at 9-
10.

As to these documents, Career Path has shown neither a
substantial need nor an undue hardship.  Career Path's stated
reason for these documents, to show that other schools engaged in
activities that it did not, is not compelling.  Whether or not
other trucking schools engaged in improper activities with SFC is
of little if any relevance to whether Career Path engaged in
those activities.  Career Path's alleged hardship is also
inadequate.  Career Path offers no reason why it is only seeking
these documents now "four or more years" after SFC's bankruptcy.

### 3    Interview Notes and Scripts Prepared by Investigators

This category of documents is described in an
affidavit attached to one of the respondents' briefs.  Melnick
Decl. at ¶ 7.  No description of the category is given other than
that it contains "interview notes and scripts prepared by the
investigators."  Career Path's briefing does not respond to this
category separately, but its arguments with respect to memoranda
concerning witness statements apply equally here.

Scripts of questions to be used in interviewing
witnesses are core attorney work product, reflecting legal
strategy and decision-making concerning the important areas of
inquiry with particular types of witnesses.  As they concern only

37

the questions to be posed to witnesses and not the answers, they have little or no relevance to any issues in the adversary action and need not be produced.

Notes of witness statements may also be core attorney work product, containing the investigators' mental impressions of a witness.  Unlike memoranda summarizing a witness interview, however, notes of an interview are more likely to contain the note-taker's record of a witness's words and demeanor and less likely to contain detailed analysis or commentary.  For the reasons given above in discussing the witness memoranda, the Court believes Career Path has failed to meet its burden to allow production of the notes of witness interviews.

### 4   Public Records

This category of documents consists of public records, including FOIA results, FOIA requests, news articles, court documents and deposition transcripts, website reports and Lexis/Nexis searches about Career Path, SFC, or other trucking schools.  It also includes asset searches concerning Career Path (Career Path having dropped its request for information about asset searches of other entities).

Career Path suggests that because this information is in the public domain, it is not entitled to work product protection.  This is incorrect.  Public documents collected by or on behalf of an attorney in anticipation of litigation constitute

work product because the choice of selecting which subjects to research and which documents to collect represents the attorney's or the agent's mental impressions and legal opinions about the important issues in the actual or anticipated litigation.  See Sporck, 759 F.2d at 315-16 (holding that the selection and compilation of publically-available and/or previously-produced documents by counsel in preparation for pretrial discovery falls within the highly-protected category of opinion work product). In addition, allowing disclosure of such information without a showing of substantial need would risk allowing opposing counsel to free-ride off an adversary's preparation.  See Hickman, 329 U.S. at 517.

Career Path could nonetheless obtain this information upon a showing of substantial need and undue hardship, but it has failed to make the required showing.  Although Career Path claims this information would be relevant to central issues in the underlying adversary action, including SFC's solvency and its intent to defraud, it has failed to make any showing as to why it cannot obtain this information itself.  By definition, the documents in this category are public and therefore equally available to Career Path as to the respondents.  There is no hardship, and certainly no undue hardship, to requiring Career Path to obtain these documents themselves rather than through the respondent's work product.

5     Electronic Documents

In addition to paper documents, the Mintz Group's investigative file also contains electronic documents.  Although the respondents do not provide an index of these documents, they have provided a percentage breakdown of these documents into different categories.  For the most part these categories track those for paper documents and the same analysis will apply to each category of documents, whether in paper or electronic form.  One category of electronic documents, however, is new:  a category for "miscellaneous correspondence" consisting of 15% of total, about which the respondents provide no further information.

In the absence of any information about this miscellaneous correspondence, the Court cannot make any findings as to whether it should be produced.  Given the extensive briefing of this issue before the Court and the numerous opportunities the respondents have had to provide this information, the Court would be justified in finding the respondents' claims of privilege waived as to this correspondence.  The Court, however, will exercise its discretion and allow the respondents, if they choose, to file a supplemental submission with an index of this correspondence.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re:                          :    MISC. DOCKET NO. 06-MC-69
STUDENT FINANCE CORPORATION,    :
                                :
     Debtor                     :
                                :
                                :
CHARLES A. STANZIALE, JR.,      :
CHAPTER 7 TRUSTEE OF            :    Case No. 02-11620-JBR
STUDENT FINANCE CORPORATION,    :    (Bankr. D. Del.)
                                :
     Plaintiff                  :
                                :
     v.                         :
                                :
CAREER PATH TRAINING            :
CORPORATION, et al.             :    Adversary Proceeding
                                :    No. 04-56414
     Defendants                 :    (Bankr. D. Del)


<u>ORDER</u>

AND NOW, this 29th day of November, 2006, upon consideration of the Motion to Overrule Objections to Subpoena and Compel Compliance with Subpoena Filed by Career Path Training Corporation ("Career Path") (Docket # 1) and the Cross Motion for Protective Order filed by Sonnenschein Nath & Rosenthal LLP ("Sonnenschein") (Docket # 5), and the oppositions thereto, including supplemental briefing, IT IS HEREBY ORDERED that the Career Path's Motion to Overrule Objections to Subpoena and Compel Compliance is DENIED and Sonnenschein's Cross Motion for Protective Order is GRANTED IN PART AND DENIED IN PART for the reasons set forth in the accompanying memorandum.

Career Path's Motion to Overrule Objections to Subpoena and Compel Compliance is DENIED and Sonnenschein's Cross Motion for Protective Order is GRANTED as to the following categories of documents within the subpoenaed investigative file:

1) Attorney notes and memoranda;

2) Investigators' memoranda and reports to Sonnenschein, including "action lists" for the investigators

3) Interview notes and scripts prepared by investigators;

4) Public records, including FOIA results, FOIA requests, news articles, court documents and deposition transcripts, website reports and Lexis/Nexis and asset searches.

5) Electronic documents that fall within categories 1-4.

Career Path's Motion to Overrule Objections to Subpoena and Compel Compliance is DENIED and Sonnenschein's Cross Motion for Protective Order is also DENIED as to the following category of documents within the subpoenaed investigative file:

6) Electronic documents that fall within the respondent's category of "miscellaneous correspondence."

If the respondents wish to continue to assert the attorney work product privilege as to this miscellaneous correspondence, the respondents shall submit an index of these documents showing the author, recipient, copyee, subject and date of each document within twenty (20) days of this Order.  Career

Path may respond to this index within fifteen (15) days of its production.

                        BY THE COURT:


                        /s/ Mary A. McLaughlin
                        MARY A. McLAUGHLIN, J.